IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO


Civil Action No. 12–cv–02558–PAB–KMT


JOHNNY L. REYNOLDS, #113703,

        Plaintiff,

v.

DIRECTOR, COLORADO DEPARTMENT OF CORRECTIONS,
MICHAEL LIND, Captain #3620,
CORDOVA, Lieutenant #3191,
JONI CORCORAN, Lieutenant #12916, and
JOHN REILLY, Correctional Industries Supervisor,

        Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**Magistrate Judge Kathleen M. Tafoya**

        This case comes before the court on Defendants' "Motion to Dismiss" (Doc. No. 44, filed

May 6, 2013.)   The court also considers herein Plaintiff's "Motion for Summary Judgment

Pursuant to USCS Fed. R. Civ. Proc. R. 56(b)."   (Doc. No. 56, filed Dec. 12, 2013 [Mot. Summ.

J.].)   For the following reasons, the court recommends that Defendants' Motion to Dismiss be

GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED as moot.

**FACTUAL BACKGROUND**

The following facts are taken from Plaintiff's Second Amended Prisoner Complaint (Doc. No. 29, filed Jan. 31, 2013 [SAC]), the "Evidence," or exhibits, (Doc. No. 1-1),[1] attached to Plaintiff's Original Complaint (Doc. No. 1, filed Sept. 26, 2013), and the parties briefing with respect to this Recommendation.[2]   In this action, Plaintiff, an inmate in the custody of the Colorado Department of Corrections (CDOC), maintains that Defendants violated the Americans with Disabilities Act (ADA) and retaliated against him for exercising his constitutional rights.

Plaintiff alleges that sometime between January 2007 and December 2010, while he was housed at the Limon Correctional Facility (LCF) in Limon, Colorado, he filed a grievance against a female staff member for unprofessional behavior of a sexual nature during "pat down searches."   (SAC at 6.)   On March 3, 2010, Plaintiff was transported from LCF for a medical appointment with a Neurosurgeon at Denver Health Medical Center.   (*Id.* at 7.)   Upon returning

---

[1]  Although these exhibits—which include grievances filed by Plaintiff as well as other documents—were attached to Plaintiff's Original Complaint, they were not attached to Plaintiff's Second Amended Complaint—perhaps due to copying cost or because the CDOC bars copying of documents previously filed.   Nevertheless Plaintiff pervasively cites to the grievances attached as exhibits to his Original Complaint.   In light of Plaintiff's *pro se* status, the court finds that Plaintiff intended to incorporate these grievances by reference into his Second Amended Complaint.   *Gee v. Pacheco,* 627 F.3d 1178, 1186 (10th Cir. 2010) (court may consider documents that the complaint incorporates by reference) (citation omitted); *see also Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir.2001) (documents attached as exhibits to the complaint may be considered on a Rule 12(b)(6) motion).

[2]  Plaintiff has attached a "Chronologic Record of Events" to his Response to the Motion to Dismiss.   (Doc. No. 52-1.)   The court cannot consider this document in ruling on Defendants' Rule 12(b)(6) arguments.   *See Gee,* 627 F.3d at 1186pursuant

to LCF, Plaintiff learned that Defendant Corcoran, a Sergeant at LCF, had released him from his job as a living unit custodian.   (*Id.*)

Plaintiff filed several grievances regarding this incident, and received several differing responses for why he was terminated.   The response to his first grievance, filed April 6, 2010, stated that Plaintiff was released from this job because he was unable to perform the duties of a living unit custodian.   (*Id.*; Doc. No. 1-1 at 6-7.)   Plaintiff maintains that this is untrue because he was performing the duties of his job up until he left for his medical appointment and, while he did have an "episode of re-injury," it was only temporary and he later returned to full duty. (SAC at 7.)   Plaintiff also maintains that even if he was unable to perform the duties of his job, LCF staff were required to offer him "job accommodations" until he could return to his regular duties.   (*Id.*)

Plaintiff later filed another Step One grievance regarding this incident on September 12, 2010.[3]   (SAC at 8; Doc. No. 1-1 at 22.)   In denying this later grievance, Defendant Cordova, an LCF Lieutenant, stated that Plaintiff was terminated from his Living Unit Custodian job due to a Code of Penal Discipline conviction for his conduct while attending the medical appointment at Denver Health.   (*See id.*)   Plaintiff maintains that this could not have been the justification for the termination of his job because, while he was convicted of a COPD offense, his conviction did not occur until March 16, 2010—one day after he was terminated from his

---

[3] Plaintiff alleges that this response was to his Step Two grievance to the Step One grievance discussed above.   However, a review of the grievances cited by Plaintiff demonstrates that this was a separate grievance regarding the same incident.

position as a Living Unit Custodian.   (SAC at 7.)   As such, Plaintiff maintains that Defendant

Cordova, "knowingly made false statements" in responding to this grievance.   (SAC at 8.)

Plaintiff was later assigned to a job in the LCF kitchen while on "Medical Restrictions"

from his back surgery in April 2010.   (*Id.* at 8.)   On or about July 2, 2010, Plaintiff was

terminated from this position for refusing to perform duties that violated his medical work

restrictions.   (*Id.*)   Lieutenant Nesby, the kitchen supervisor who initially fired Plaintiff, claimed

that Plaintiff's work restrictions were not listed in the computer system and told Plaintiff that if

he retrieved documented proof of the restrictions from the LCF medical department, she would

reinstate his job.   (*Id.*)

On July 9, 2010, Plaintiff was ultimately able to obtain proof of his medical work

restrictions from his medical provider, Physician's Assistant Giesla Walker.   (*Id. at* 9.)   Upon

returning to his living unit, Plaintiff spoke with Captain Outen, the living unit captain, about an

unspecific "situation between [Plaintiff] and the living unit staff members in question."[4]   (*Id.*)

Defendant Corcoran was present during this meeting.   (*Id.*)   Cpt. Outen stated that he would

resolve the unspecified issues in the living unit, but instructed Plaintiff to resolve his issues with

respect to his kitchen job on his own.   (*Id.*)

On July 12, 2010, at 8:00 AM, Plaintiff went to the LCF kitchen to meet with Lt. Nesby.

(*Id.*; Doc. No. 1-1 at 12.)   Lt. Nesby, however, was away, so Plaintiff spoke with Sergeant

Schneider.   (SAC at 9.)   Sgt. Schneider informed Plaintiff that Defendant Corcoran had just

---

[4] Although not entirely clear, it appears that the unspecified "situation" may have been Plaintiff's
termination from his position as a Living Unit Custodian.

called to inform her that the Plaintiff's documentation confirming his work restrictions was false and that Plaintiff should not be rehired.   (*Id.*)

That same day, Plaintiff filed a grievance against Defendant Corcoran regarding this incident.   (*Id.*; Doc. No. 1-1 at 12.)   That grievance was denied because Plaintiff requested a remedy that was not available to him—namely, that Defendant Corcoran apologize and cease any further harassment.   (Doc. No. 1-1 at 12.)

Defendant filed another grievance regarding the termination of his LCF kitchen job on July 20, 2010.   (SAC at 9; Doc. No. 1-1 at 9.)   Shortly after filing the grievance, Plaintiff met with Defendant Lind.   (SAC at 9.)   After providing Defendant Lind with "verified documents"—presumably regarding his medical work restrictions—Defendant Lind allegedly agreed to reinstate Plaintiff's job.   (*Id.*)   However, because Defendant Lind refused to authorize back pay, Plaintiff informed Defendant Lind that he intended to continue to grieve the issue for the "full remedy requested."   (*Id.*)

On August 12, 2010, Plaintiff was placed back on the work schedule in the LCF kitchen. (*Id.*)   That same day he received a response to his Step One grievance from Defendant Lind. (*Id.*; Doc. No. 1-1 at 9.)   Defendant Lind denied the grievance because Plaintiff's work restrictions were not in place at the time he was terminated from his kitchen job.   (Doc. No. 1-1 at 9.)   Plaintiff alleges that the denial of this grievance "in effect re-instead [his] wrongful termination and refused the back pay."   (SAC at 9.)

On December 15, 2010, Plaintiff was transferred from LCF to Sterling Correctional Facility after he had begun drafting a civil rights complaint.   (SAC at 10.)   He was transferred back to LCF on March 30, 2012.   (*Id.*)   Plaintiff alleges that he was transferred to LCF as part of an inmate exchange to fill positions in the Correctional Industries Garment Factory, which is part of the LCF Incentive Unit.   (*Id.*)   However, before he could be assigned to the Garment Factory, it was required that Plaintiff first be assigned to the LCF kitchen for a minimum of 30 days.   (*Id.*)

When Plaintiff attempted to obtain the "promised" job assignment with the Correctional Industries Garment Factory, he was denied the job by Defendant Reilly.   (*Id.*)   Plaintiff filed a grievance and was told he was being denied the position due to "Disruptive Behavior."   (*Id.* at 6, 10; Doc. No. 1-1 at 35-36.)

Plaintiff also alleges that since he returned to LCF, he has been wrongfully charged for medical services and appointments and that he was injured by security staff during a medical transport.   (SAC at 11; Doc. No. 1-1 at 38-40, 42-44.)

## PROCEDURAL BACKGROUND

Plaintiff initiated this action on September 26, 2012 by filing his original Complaint. (*See* Doc. No. 1.)   After being directed by Magistrate Judge Boyd N. Boland to cure certain deficiencies in his pleading (*see* Doc. Nos. 7, 15 & 23), Plaintiff's Second Amended Complaint was filed on January 31, 2013 (s*ee* SAC).

On March 6, 2013, Senior District Judge Lewis T. Babcock dismissed Plaintiff's Second

Amended Complaint in part.   Specifically, Judge Babcock dismissed the Warden of the Limon

Correctional Facility, P.A. Giesla Walker, and Grievance Officer Anthony DeCesaro as

defendants, as well as the Director of the CDOC in his or her individual capacity.   (Order, Doc.

No. 33.)   Plaintiff's remaining claims are as follows:

> Claim One for violations of the ADA against Defendant Director of the CDOC in his official capacity;
>
> Claim Two, a § 1983 retaliation claim against Defendants Corcoran, Cordova, and Lind;
>
> Claim Three, a § 1983 retaliation claim against unspecified defendants based on his transfer to SCF;
>
> Claim Four, a § 1983 retaliation claim against Defendant Reilly; and
>
> Claim Five, apparently a § 1983 claim against unspecified defendants for the wrongful medical charges and injuries caused by security staff during a medical transport.
>
> Defendants' Motion to Dismiss was filed on May 6, 2013.   (*See* Mot. Dismiss.)   On July

18, 2013, Plaintiff filed a "Motion to Deny Defendants [sic] Motion to Dismiss" (Doc. No. 52),

which the court construes, and hereinafter refers to, as Plaintiff's Response to Defendants'

Motion to Dismiss.   Defendants Reply was filed on August 5, 2013.   (Doc. No. 54.)

Plaintiff's Motion for Summary Judgment was filed on December 16, 2013.   (*See* Mot.

Summ. J.)   Defendants' Response to Plaintiff's Motion for Summary Judgment was filed on

January 6, 2014.   (Doc. No. 58.)   Pursuant to D.C.COLO.LCivR 56.1C and Fed. R. Civ. P. 6(d),

Plaintiff had until January 23, 2014 to file a reply.   No reply was filed on or before that date.

Accordingly, these matters are ripe for the court's review and recommendation.

## LEGAL STANDARDS

### A.  Pro Se *Plaintiff*

Plaintiff is proceeding *pro se*.   The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."   *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).   A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.   *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

**B.**     *Lack of Subject Matter Jurisdiction*

Rule 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction.   Fed. R. Civ. P. 12(b)(1).   Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case.   Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint.   *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).   The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.   *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).   A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."   *See Basso*, 495 F.2d at 909.   The dismissal is without prejudice.   *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006); *see also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that dismissals for lack of jurisdiction should be without prejudice because a dismissal with prejudice is a disposition on the merits which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction."   *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).   When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).

Where a party challenges the facts upon which subject matter jurisdiction depends, a district

court may not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide

discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary

hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."   *Id.*

**C.      *Failure to State a Claim Upon Which Relief Can Be Granted***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss

a claim for "failure to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6)

(2007).   "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that

the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally

sufficient to state a claim for which relief may be granted."   *Dubbs v. Head Start, Inc.*, 336 F.3d

1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual

allegations are true and construes them in the light most favorable to the plaintiff."   *Hall v.

Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991).   "To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic

Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   Plausibility, in the context of a motion to

dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."   *Id.*   The *Iqbal* evaluation

requires two prongs of analysis.   First, the court identifies "the allegations in the complaint that

10

are not entitled to the assumption of truth," that is, those allegations which are legal conclusion,

bare assertions, or merely conclusory.   *Id*. at 1949–51.   Second, the Court considers the factual

allegations "to determine if they plausibly suggest an entitlement to relief."   *Id*. at 1951.   If the

allegations state a plausible claim for relief, such claim survives the motion to dismiss.   *Id*. at

1950.

Notwithstanding, the court need not accept conclusory allegations without supporting

factual averments.   *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir.

1998).   "[T]he tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions.   Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice."   *Iqbal*, 129 S. Ct. at 1940.

Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

elements of a cause of action will not do.'   Nor does the complaint suffice if it tenders 'naked

assertion[s]' devoid of 'further factual enhancement.'"   *Id.* at 1949 (citation omitted).   "Where a

complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of

the line between possibility and plausibility of 'entitlement to relief.'"   *Iqbal*,129 S. Ct. at 1949

(citation omitted).

## ANALYSIS

### A.   *Eleventh Amendment Immunity from § 1983 Claims*

Plaintiff's Second Amended Complaint does not specify whether his § 1983 claims are

brought against Defendants in their individual capacities, official capacities, or both.   Where a

11

plaintiff fails to indicate the nature of the liability sought, the court should look to "'the

substance of the pleadings and the course of proceedings' to determine whether the plaintiff is

suing the defendants in their individual capacities or their official capacities, or both." *Arceo v.*

*City of Junction City, Kan.,* 182 F. Supp. 2d 1062, 109-90 (D. Kan. 2002) (quoting *Pride v.*

*Does,* 997 F.2d 712, 715 (10th Cir. 1993)).   Because Plaintiff's Amended Complaint is not

entirely clear on this point, the court will presume that the defendants have been sued in both

their official and individual capacities.

Defendants argue that to the extent Plaintiff's § 1983 retaliation claims seek money

damages against them in their official capacities, they are barred by Eleventh Amendment

immunity.   The court agrees.

The Eleventh Amendment to the United States Constitution states: "The Judicial power

of the United States shall not be construed to extend to any suit in law or equity, commenced or

prosecuted against one of the United States by Citizens of another State, or by Citizens or

Subjects of any Foreign State."   U.S. Const. amend. XI.   It has been interpreted to bar a suit by

a citizen against the citizen's own state in federal court.   *Johns v. Stewart*, 57 F.3d 1544, 1552

(10th Cir. 1995).   Suits against state officials in their official capacity should be treated as suits

against the state.   *Hafer v. Melo*, 502 U.S. 21, 25 (1991).   This is because a suit against a state

official in his or her official capacity is a suit against the official's office and therefore is no

different from a suit against the state itself.   *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71

(1989).   The Eleventh Amendment thus shields state officials, acting in their official capacities, from claims for monetary relief.   *See Hill v. Kemp*, 478 F.3d 1236, 1255–56 (10th Cir. 2007).

Moreover, a § 1983 action may only be brought against a person.   *See* 42 U.S.C. § 1983. Neither states nor state officials sued in their official capacity for monetary damages are persons within the meaning of § 1983.   *Will*, 491 U.S. at 70–71.

Plaintiff's claims for money damages against the Defendants in their official capacities constitute claims against the CDOC.   Therefore, Plaintiff's official capacity-claims for money damages are barred by the Eleventh Amendment and are properly dismissed for lack of subject matter jurisdiction.   *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994).

Plaintiff also seeks declaratory and injunctive relief.   (SAC at 13.) The Eleventh Amendment does not always bar actions in federal court seeking injunctive relief against state officials in their official capacity.   *See Will*, 491 U.S. at 71 n. 10 ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State.") (internal quotation marks and citation omitted); *Ex parte Young*, 209 U.S. 123, 159-60 (1908) (holding that the Eleventh Amendment generally does not bar official-capacity claims seeking prospective injunctive relief from a state official).   Nevertheless, to the extent that Plaintiff seeks retrospective declaratory relief—by way of a "Declaration Judgment" that "the plaintiffs [sic] rights were indeed violated and done so by the defendants" (SAC at 13)—such claims are barred by the Eleventh Amendment.   *Meiners v. University of Kan.*, 359 F.3d 1222,

13

1232 (10th Cir.2004).   Therefore, Plaintiff's official capacity-claims for declaratory relief are also barred by the Eleventh Amendment.   Finally, to the extent that Plaintiff's § 1983 claims seeks injunctive relief against Defendants in their official capacity, they are properly dismissed for failure to state claim, as discussed *infra*.

**B.     Statute of Limitations**

Defendants argue that Plaintiff's ADA claims and § 1983 retaliation claims against Defendants Corcoran, Cordova, and Lind are barred by the applicable statute of limitations. "Although a statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss 'when the dates given in the complaint make clear that the right sued upon has been extinguished.'"   *Torrez v. Eley*, 378 F. App'x 770, 772 (10th Cir. 2010) (quoting *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980); *Dummar v. Lummis*, 543 F.3d 614, 619 (10th Cir. 2008).

**1.     ADA claim**

"Colorado's general two-year statute of limitations, Colo. Rev. Stat. § 13-80-102, applies to actions arising under Title II of the ADA."   *Hughes v. Colo. Dep't of Corrs.*, 594 F. Supp. 2d 1226, 1235 (D. Colo. 2009)) (citing *Quinn v. Univ. of Okla.*, 276 F. App'x 809, 810 (10th Cir. 2008); *Wilkins v. Colo. Dep't of Soc. Servs.*, 9 F App'x 818, 819 (10th Cir. 2001); *see also Rhodes v. Langston Univ.*, 462 F. App'x 773, 780 n.6 (10th Cir. 2011) (because the ADA does not set forth a statute of limitations, the state's general statute of limitations applies).   "In general, . . . claims accrue and the statute of limitations begins to run when the plaintiff knows or

has reason to know of the existence and cause of the injury which is the basis of his action."

*Alexander v. Oklahoma,* 382 F.3d 1206, 1215 (10th Cir. 2004).   "A plaintiff has reason to know

of his injury when he should have discovered it through the exercise of reasonable diligence."

*Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994).

Here, Plaintiff alleges that he learned he was terminated from his position as a Living

Unit Custodian after he returned to LCF from his medical appointment.   Although Plaintiff does

not specify the exact date he returned to LCF, he filed a grievance regarding this incident on

April 2, 2010.   (Doc. No. 1-1 at 6.)   Further, the response to that grievance, which Plaintiff

received on June 2, 2010, informed Plaintiff that he was released from the Living Unit Custodian

position due to his back issues.   (*Id.*)   As such, Plaintiff knew or should have known of the

existence and cause of his injury no later than June 2, 2010.   However, Plaintiff did not file this

action until September 26, 2012, more than two years after June 2, 2010.   Accordingly,

Plaintiff's ADA claim is time-barred.

### 2.      *§ 1983 Retaliation Claims Against Defendants Corcoran, Cordova, and Lind*

Actions asserted under § 1983 are subject to the general personal injury limitation period

of the state in which the action arose.   *Hunt v. Bennett*, 17 F.3d 1263, 1265 (10th Cir. 1994).

Thus, the same statute of limitations that governs ADA claims applies to § 1983 claims for relief.

*Id.* at 1266; Colo. Rev. Stat. § 13–80–102.   Federal law rather than state law determines when a

cause of action accrues.   *See Industrial Constructors Corp. v. United States Bureau of*

*Reclamation*, 15 F.3d 963, 968 (10th Cir.1994).   "The statute of limitations begins to run when

15

the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action."   *Id.* at 969.   "A civil rights action accrues when facts that would support a cause of action are or should be apparent."   *Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995).

The court finds that Plaintiff's § 1983 claims against Defendant Corcoran and Lind are untimely.   First, as discussed above, although it is unclear when Plaintiff returned from his medical appointment to learned that Defendant Corcoran terminated from his Living Unit Custodian job, Plaintiff filed a grievance regarding this incident on April 2, 2010.   (Doc. No. 1-1 at 6.)   Further, Plaintiff received a response to this grievance from Defendant Corcoran on June 2, 2010.   (*Id.*)   Although it is not entirely clear what grievance or other protected activity, if any, allegedly motivated Defendant Corcoran to retaliate against Plaintiff, *see infra,* by definition, it must have occurred prior to his termination from the Living Custodian position.   As such, Plaintiff knew or should have known of the facts giving rise to this first aspect of his retaliation claim against Defendant Corcoran on or before June 2, 2010.

Plaintiff also alleges that Defendant Corcoran retaliated against him on July 12, 2010 by informing Sergeant Schneider that the documentation of his medical restrictions was false and instructing her that Plaintiff should not be rehired.   (SAC at 9.)   Not only did Plaintiff learned of Defendant Corcoran's conversation with Sgt. Schneider on July 12, 2010 (*id.*)—he filed a grievance arguing that Defendant Corcoran's actions amounted to retaliation that same day. (Doc. No. 1-1 at 12.)   As such, Plaintiff knew of the facts giving rise to this second aspect of his retaliation claim against Defendant Corcoran on July 12, 2010.

16

Defendant Lind denied Plaintiff's grievance over being fired from the LCF kitchen job—even though Defendant Lind had previously agreed to reinstate Plaintiff—on August 12, 2010.   (Doc No. 1-1 at 9.)   As such, Plaintiff knew or should have known of the factual basis for his retaliation claim against Defendant Lind on August 12, 2010.

Plaintiff did not file this action until September 26, 2012—more than two years after June 2, 2010, July 12, 2010, and August 12, 2010.   Accordingly, in the absence of equitable tolling, Plaintiff's § 1983 claims against Defendants Corcoran and Lind are time-barred.

However, the court concludes that Plaintiff's retaliation allegations against Defendant Cordova are timely.   Although Plaintiff filed the second grievance regarding the termination from his job as a Living Unit Custodian on September 13, 2010, it appears that he did not receive Defendant Cordova's response to that grievance until October 1, 2010.   (Doc. No. 1-1 at 22.) Because Plaintiff alleges that Defendant Cordova knowingly made false statements in her response, Plaintiff could not have known of the basis of his claim against Defendant Cordova until he received her response.   Because Plaintiff filed this action on September 26, 2012, within two years of October 1, 2010, Plaintiff's § 1983 retaliation claim against Defendant Cordova is not barred by the statute of limitations.

### 3.     *Equitable Tolling*

In his response, Plaintiff argues that to the extent that his claims may be untimely, he is nevertheless entitled to equitable tolling of the statute of limitations.   More specifically, Plaintiff

sets forth two separate arguments for equitable tolling, both relating to his exhaustion of administrative remedies, pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

First, Plaintiff argues generally that inmates are entitled to equitable tolling during the time period they are exhausting their administrative remedies, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Second Plaintiff argues that he is entitled to equitable tolling because the lack of his signature on "any grievance establishes that the Defendants failed to follow the grievance process and properly serve [him] in accordance with AR 850-04." (Resp. at 3.)

Equitable tolling is governed by state law. *Fratus v. DeLand,* 49 F.3d 673, 675 (10th Cir. 1995) Under Colorado law, once the statute of limitations is raised as an affirmative defense, the plaintiff bears the burden of showing that the statute is properly tolled. *Garrett v. Arrowhead Improvement Ass'n,* 826 P.2d 850, 855 (Colo. 1992).

The court first rejects Plaintiff's argument that he is automatically entitled to equitable tolling for the time he was exhausting his administrative remedies. The Tenth Circuit has clearly held that "under Colorado law, the statute of limitations is not automatically tolled whenever an individual pursues administrative remedies." *Braxton v. Zavaras,* 614 F.3d 1156, 1160-61 (10th Cir. 2010) (citing *Ferrel v. Colo. Dep't of Corrs.,* 179 P.3d 178, 188-189 (Colo. App. 2007)). Instead, under Colorado law, "equitable tolling is limited 'to situations in which either the defendant has wrongfully impeded the plaintiff's ability to bring the claim or truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent

18

efforts.'"   *Id.* (quoting *Dean Witter Reynolds, Inc. v. Hartman,* 911 P.3d 1094, 1096 (Colo. 1996)).

Under the PLRA, Plaintiff was required to exhaust all administrative remedies prior to filing suit in federal court, 42 U.S.C. § 1997e(a), and failure to do so ordinarily results in the dismissal of the plaintiff's claims, *see, e.g., Jernigan v. Stuchell,* 304 F.3d 1030, 1032-33 (10th Cir. 2002).   "Accordingly, the PLRA's exhaustion requirement could constitute a circumstance 'mak[ing] it impossible for [a] plaintiff to file his or her claims within the statutory period,' thus entitling a plaintiff to equitable tolling 'so long as [he] makes good faith efforts to pursue the claim when possible.'"   *Braxton,* 614 F.3d at 1161 (quoting *Dean Witter,* 911 P.2d at 1097).

Relying on the requirement that a plaintiff must make good faith efforts to pursue his claims when possible, the Tenth Circuit has recognized that whether a plaintiff is entitled to equitable tolling for the period he was exhausting his administrative remedies "depends on whether [he] diligently pursued [his] claims following the exhaustion of [] administrative remedies."   *Id.* at 1162.   More specifically, the Tenth Circuit has declined to apply equitable tolling where "ample time for filing within the two-year limitations period remained after the exhaustion of remedies, but [] the plaintiff failed to diligently pursue his opportunity to file." *Rosales v. Ortiz,* 325 F App'x 695 (10th Cir. 2009); *see also Braxton,* 614 F.3d at 1162.

The CDOC provides inmates with administrative remedies in the form of a grievance process set forth in CDOC Administrative Regulation (AR) 850-04.   (Resp., Ex. B [AR

850-04].)[5]   Under AR 850-04, inmates must grieve any alleged injuries or unlawful conduct by

pursuing a three-step process:   (1) attempt to resolve the issue or complaint by filing a Step One

grievance within 30 days of the discovery of the issue or complaint; (2) if the inmate is not

satisfied with the response/resolution of his Step One grievance, he must filed a Step Two

grievance within five days of receipt of the written response to his Step One grievance; and,

finally, (3) if the inmate is still not satisfied with the response/resolution of his grievance, he

must file a Step Three grievance within five days of receipt of the written response to his Step

Two grievance.   (*See generally* AR 850-04.)

Here, with respect to Plaintiff's retaliation claim against Defendant Corcoran, a response

to Plaintiff's Step Three grievance was issued on December 2, 2010.   (Doc. No. 1-1 at 16.)[6]

And, as to Plaintiff's retaliation claim against Defendant Lind, a response to Plaintiff's Step

Three grievance was issued on January 27, 2011.   (Doc. No. 1-1 at 30.)   Both of those

responses informed Plaintiff that he had exhausted his administrative remedies.   (Doc. No. 1-1 at

16, 30.)   However, Plaintiff has not offered any explanation for why he waited nearly 20 months

from January 27, 2011 to file this action.   *See Braxton,* 614 F.3d at 1162; *see also Rosales,* 325

---

[5] The court may take judicial notice of the CDOC's administrative process.   *See Ray v. Aztec Well Service Co.*, 748 F.2d 888, 889 (10th Cir. 1984) (court may take judicial notice of agency rules and regulations); *Muniz v. Kaspar*, No. 07-cv-01914-MSK-MJW, 2008 WL 3539270, at * 3 (D. Colo. Aug. 12, 2008) (taking "judicial notice of AR 850–04, the administrative regulation describing the grievance process").

[6] Although this Step Three response refers to Defendant Cordova, Plaintiff admits that this was a typographical error and that it should have named Defendant Corcoran.   A review of Plaintiff's grievances featuring the same grievance number confirms Plaintiff's position. (Doc. No. 1-1 at 13-16.)

F. App'x at 697 ("Waiting . . . the better part of a year or more to file [] fails equitable tolling qualification.")

As discussed above, Plaintiff argues he is nevertheless entitled to equitable tolling because the lack of his signature on grievances "establishes that the Defendants failed to follow the grievance process and properly serve the Plaintiff in accordance with" AR 850-04.   (Resp. at 3.)   Although AR 850-04 provides that that "[a] copy of the response with electronic signature shall be provided to the offender," AR 850-04(IV)(E)(4), it is clear to the court that this provision requires the electronic signature of the officer responding to the grievance, rather than the inmate's signature.   AR 850-04(IV)(E)(8) also does not require that an inmate's signature for the completion of the grievance process.   Instead, that provision requires only that "[u]pon completion of the written response, Step 1, Step 2, and Step 3 grievances will be forwarded to the facility grievance coordinator who shall cause service to be made upon the offender."   AR 850-04(IV)(E)(8)   Plaintiff does not assert or otherwise demonstrate that he was not served with the Step One, Step Two, and Step Three grievances and responses.

Accordingly, Plaintiff has failed to demonstrate that he pursued his § 1983 claims against Defendants Corcoran and Lind with diligence after his administrative remedies were exhausted, Therefore, Plaintiff is not entitled to equitable tolling with respect to these claims.   "'Neither the defendants nor extraordinary circumstances stood in the way of [Plaintiff's] filing suit within the statutory period.   Only [his] inaction prevented [him] from filing in a timely manner.'" *Braxton,* 614 F.3d at 1162 (quoting *Dean Witter,* 911 P.2d at 1099).

Whether Plaintiff is entitled to equitable tolling on his ADA claim is a more difficult question.   Plaintiff has incorporated into his Second Amended Complaint the Step 1 and Step 2 grievances relating to this claim, but not the Step 3 grievance.   (*See* Doc. No. 1-1 at 6-8.)   As such, it is not entirely clear when Plaintiff exhausted his administrative remedies as to this claim.   Arguably, this means that Plaintiff has failed to that show that the requirement that he exhaust his administrative remedies interfered with his ability to file his ADA claim.   However, out of an abundance of caution, the court finds, in light of this ambiguity, that the better course of action is to decline to resolve the question of whether Plaintiff is entitled to equitable tolling, and consider Defendants' alternative argument that Plaintiff fails to state a claim for relief under the ADA.

In conclusion, the court finds that Plaintiff's ADA claim and § 1983 retaliation claims against Defendants Lind and Corcoran are untimely under the applicable statute of limitations, but that Plaintiff's § 1983 retaliation claim against Defendant Cordova is timely.   The court further finds that Plaintiff is not entitled to equitable tolling of the statute of limitations with respect to his § 1983 claims against Defendant Corcoran and Lind, but declines to resolve at this juncture whether he is entitled to equitable tolling with respect to his ADA claim.

Therefore, the court finds that Plaintiff's § 1983 claims against Defendants Corcoran and Lind are time-barred and therefore properly dismissed.   The court considers below whether Plaintiff states a claim for relief under the ADA and under § 1983 against Defendant Cordova.

**C.      Failure to State a Claim for Relief**

*1.      ADA claim*

Defendants argue that Plaintiff fails to state a claim for relief under the ADA because he has not demonstrated that his impairment substantially limits a major life activity.   The court agrees with this argument and finds that Plaintiff's ADA claim also fails because (1) Plaintiff cannot recover money damages under the ADA and (2) his request for injunctive relief is not related to his ADA claim.

At the outset, the court notes that the ADA contains three titles which address discrimination against persons with disabilities in three contexts.   However, to the extent that Plaintiff has sued the Director of the CDOC in his official capacity, "[t]he ADA's Title II, prohibiting discrimination in the distribution of public services, is the only title" that plaintiff's allegations arguably implicate.   *White v. State of Colo.*, 82 F.3d 364, 367 n. 5 (10th Cir. 1996). *See also Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206 (1998) (Title II of the ADA applies to state prisons and prison services).   Thus, although Plaintiff has not invoked any particular title of the ADA, his claims necessarily arise under Title II.

Title II provides in pertinent part:

[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.   Thus, "[t]o state a claim under Title II, the plaintiff must allege that (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the

benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of

benefits, or discrimination was by reason of a disability."   *Robertson v. Las Animas Cnty.*

*Sheriff's Dept.,* 500 F.3d 1185, 1193 (10th Cir. 2007) (citation omitted).

A "'qualified individual with a disability'" is defined as:

> an individual with a disability who, with or without reasonable modifications to
> rules, policies, or practices, the removal of architectural, communication, or
> transportation barriers, or the provision of auxiliary aids and services, meets the
> essential eligibility requirements for the receipt of services or the participation in
> programs or activities provided by a public entity.

42 U.S.C. § 12131(2).

While Plaintiff alleges that he had a "temporary disability" that required back surgery

(SAC at 5), he has failed to sufficiently allege that he is disabled under the ADA.   To be

"disabled" under ADA, a plaintiff must show he has a physical or mental impairment that

substantially limits one or more major life activities.   *Holt v. Grand Lake*, 443 F.3d 762, 765

(10th Cir.2006); *see also* 42 U.S.C. § 12102(2) (ADA extends only to "a physical or mental

impairment that substantially limits one or more of the major life activities of such individual.").

Merely having an impairment does not make one disabled for purposes of the ADA.   *See*

*Steele v. Thiokol Corp.*, 241 F.3d 1248, 1252 (10th Cir. 2001) ("the ADA demands that we

examine exactly how [plaintiff's] major life activities are limited by his impairment.").   A

determination of disability "is not necessarily based on the name or diagnosis of the impairment

the person has, but rather on the effect of that impairment on the life of the individual."

*Homeyer v. Stanley Tulchin Associates, Inc.,* 91 F.3d 959, 962 (7th Cir.1996).   "Some

impairments may be disabling for particular individuals but not for others, depending upon the stage of the disease or disorder, the presence of other impairments that combine to make the impairment disabling or any number of other factors."   *Id.*; *but see EEOC Comm'n v. J.H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir.2001) ("[S]o long as the complaint notifies the defendant of the claimed impairment, the substantially limited major life activity need not be specifically identified in the pleading."). "Whether the plaintiff has an impairment within the meaning of the ADA and whether the conduct affected is a major life activity for purposes of the ADA are questions of law for the court to decide."   *Berry v. T–Mobile USA, Inc.*, 490 F.3d 1211, 1216 (10th Cir. 2007).

Plaintiff has not alleged that he is substantially limited in any of his major life activities. Indeed, outside of stating that he required back surgery (SAC at 5), it is unclear from the allegations of the Second Amended Complaint what Plaintiff's injury was, much less whether and how it impacted any major life activity.

In addition to failing to adequately allege that he is disabled, Plaintiff does not seek any relief that may be obtained under the ADA.   Title II of the ADA is not a valid abrogation of Colorado's Eleventh Amendment immunity from claims for money damages.   *Chaffin v. Kansas,* 348 F.3d 850, 866 (10th Cir. 2003).   In addition, the Supreme Court has recognized that punitive damages are not available in a private cause of action brought under Title II of the ADA.   *Barnes v. Gorman,* 536 U.S. 181, 189 (2002).   Thus, Plaintiff may not obtain money damages

for any alleged violations of the ADA.   Instead, Plaintiff is limited to prospective injunctive relief on his ADA claim.

Plaintiff's only request for injunctive relief seeks to prevent Defendants "from any further behavior that can be deemed as Retaliation, Harassment, or any other type of Adverse action against the plaintiff for the filing of this complaint or engaging in any and all activities that are clearly protected by law or Constitutionally."   (SAC at 13.)   This request for injunctive relief clearly does not relate to his ADA allegation.   Therefore, even if Plaintiff could successfully establish a violation of Title II of the ADA, he would not be entitled to any of the relief requested in his Second Amended Complaint.

Altogether, the court finds that Plaintiff's Title II claim fails to state a claim for relief. As such, Defendants' Motion to Dismiss is properly granted as to Claim One and the Director of the CDOC is properly dismissed as a defendant in his or her official capacity.

### 2.      § 1983 Retaliation Claims

Plaintiff's second, third, and fourth claims allege that he was impermissibly retaliated against for the exercise of his constitutional rights.   It is well-settled that "'[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights.   *Peterson v. Shanks,* 149 F.3d 1140, 1144 (10th Cir. 1998).   In particular, officials may not retaliate against prisoners for filing administrative grievances.   *Allen v. Avance,* 491 F. App'x 1, 5 (10th Cir. 2012) (citing *Williams v. Meese,* 926 F.2d 994, 998 (10th Cir. 1991)).

To state a retaliation claim, a plaintiff must allege (1) that he was engaged in constitutionally protected activity; (2) that the defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) the defendants' adverse actions were substantially motivated by the plaintiff's protected activity. *Allen v. Avance,* 491 F. App'x 1, 6 (10th Cir. 2012) (citing *Shero v. City of Grove,* 510 F.3d 1196, 1203 (10th Cir. 2007)).

The third element requires that the plaintiff show that defendants' retaliatory motive was a "but for" cause of the defendants' actions. *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir.1990). "An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of [his] constitutional rights." *Peterson*, 149 F.3d at 1144 (quotation omitted) (emphasis in original). "[A]n inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in protected activity." *Peterson,* 149 F.3d at 1144. Thus, factual allegations consisting only of engagement in protected activity "[do] not establish the requisite causal connection for [a] retaliation claim. If it did, litigious prisoners could claim retaliation over every perceived slight . . . ." *Strope v. Cummings*, 381 F. App'x 878, 883 (10th Cir. 2010) (unpublished).

An inmate may be able to establish that a defendant's actions were substantially motivated by protected activity where the allegations show (1) the defendant was aware of his protected activity, (2) the protected activity complained of the defendants' actions, and (3) the alleged retaliatory act "was in close temporal proximity to the protected activity. *Allen,* 491 F.

27

App'x at 5 (quoting *Gee,* 627 F.3d at 1189).   However, temporal proximity between protected activity and a challenged prison action does not, in itself, demonstrate the causal nexus for a retaliation claim.   *See Friedman v. Kennard*, 248 F.App'x 918, 922 (10th Cir.2007) (citing cases) ("Standing alone and without supporting factual allegations, temporal proximity between an alleged exercise of one's right of access to the courts and some form of jailhouse discipline does not constitute sufficient circumstantial proof of retaliatory motive to state a claim.").

> ### a.   *Claim Two against Remaining Defendant Cordova*

Plaintiff alleges that, by making false statements in response to his September 12, 2010 grievance over being terminated from his position as a Living Unit Custodian, Defendant Cordova was "guilty of 'Failing to Supervise' and . . . Approving and/or Authorizing such misconduct."   (SAC at 8.)   Plaintiff maintains that Defendant Cordova made false statements in responding to his grievance by stating that Plaintiff was terminated from his job due to a Code of Penal Discipline conviction, even though Plaintiff's conviction occurred after he was terminated from his job.   (*See id.* at 7-8.)

It is well establish "that a denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by the plaintiff, does not establish personal participation under § 1983."   *See Gallagher v. Shelton,* 587 F.3d 1063, 1069 (10th Cir. 2009).   Moreover, even if Defendant Cordova could be held liable based on her response to Plaintiff's grievance, Plaintiff does not point to any grievance or other protected activity that allegedly motivated Defendant Cordova to make "false statements" in responding to his grievance.   Even if

28

Defendant Cordova's response to Plaintiff's grievance was erroneous, Plaintiff's has not alleged

any facts to suggest it was anything other than a good-faith mistake.   As such, Plaintiff's

allegations fail to establish, by way of specific facts, that but for a retaliatory motive, Defendant

Cordova would not have responded as she did.

> b.   ***Claim Three***

Plaintiff's third claim alleges that he was transferred from LCF to SCF on December 15,

2010, apparently in relation for the fact that he had begun preparing a civil rights complaint.

(SAC at 10.)   First and foremost, this claim fails because Plaintiff has not alleged that any of the

named defendants personally participated in the decision to transfer him from LCF to SCF.

*Bennett v. Passic,* 545 F.2d 1260, 1262-63 (10th Cir. 1976) (personal participation in the alleged

constitutional violation is an essential element of a § 1983 claim); *Mallet v. Law*, No.

13-cv-02676, 2014 WL 421569, 2014 421569, at *3 (D. Colo. Feb. 3, 2014) (rejecting a

retaliation claim where the plaintiff did not allege that any of the named defendants were

involved in the alleged acts of retaliation).   Moreover, even if any of the named defendants were

responsible for this decision, Plaintiff does not allege that whether and how they were aware that

he was drafting a civil rights complaint before he was transferred.   *Allen,* 491 F. App'x at 5

(quoting *Gee,* 627 F.3d at 1189).   Furthermore, to the extent that Plaintiff alleges that he that he

"had filed the multiple grievances against the staff of Limon as stated previously" (SAC at 10),

pointing generally to previously-filed grievances is insufficient to establish the requisite causal

connection for a retaliation claim.   *Strope,* 381 F. App'x at 883.   If it were sufficient, "litigious

prisoners could claim retaliation over every perceived slight and resist [a dispositive motion] simply by pointing to their litigiousness." *Id.*

Therefore, Plaintiff's third claim not only fails to allege that any of the named defendants were involved in the decision to transfer him to SCF, but also fails to state a plausible claim for retaliation.   Accordingly, Plaintiff's third claim is properly dismissed.

### c.   *Claim Four*

Plaintiff's fourth claim alleges that, upon returning to LCF, after a 15 month absence, Defendant Reilly denied him a "promised job assignment" in the LCF garment factory.   (SAC at 6, 10.)   Plaintiff maintains that Defendant Reilly denied him this job assignment because of Plaintiff's grievance against the unnamed female staff member for "unprofessional behavior" during a pat down search.   (*See id.* at 2; Doc. No. 1-1 at 35.)

The court finds that Plaintiff fails to state a claim for relief against Defendant Reilly. First and foremost, to the extent allegations of temporal proximity may tend to establish a retaliatory motive, *Allen,* 491 F. App'x at 5, Plaintiff's grievance against the unnamed female staff member predated Defendant Reilly's actions by several *years*.   (*see* SAC at 2; Doc. No. 1-1 at 35.)   Furthermore, Plaintiff fails to allege that Defendant Reilly knew about that grievance. *Aleen,* 491 F. App'x at 5.

Plaintiff's remaining allegations that Defendant Reilly denied him the garment factory job in order to retaliate against him are speculative at best.   Plaintiff plainly disputes the justification for denying him the garment factory job—namely, that he had exhibited "Disruptive Behavior"

(SAC at 10)—and maintains, in a barebones fashion, that he "regularly received good job and attitude ratings" (*Id.* at 2). However, Plaintiff's bald and conjectural assertion that the only other justification for this action was to retaliate against him for complying with his duty to report an LCF staff member's sexual misconduct and unprofessional behavior years earlier (*id.* at 2) is insufficient to establish the requisite causal connection for a § 1983 retaliation claim.

Accordingly, the court finds that Plaintiff has failed to state a plausible claim for § 9183 retaliation against Defendant Reilly. Therefore, Plaintiff's fourth claim is properly dismissed.

### d.   *Claim Five*

Plaintiff's fifth claim alleges that he was wrongfully charged for medical services and appointments that he was injured by security staff during a medical transport. However, Plaintiff again does not allege that any of the named defendants were involved in these incidents. As such, this claim fails to allege the requisite personal participation for stating a claim under § 1983. *Bennett,* 545 F.2d at 1262-63. In addition, Plaintiff does not allege that these actions were taken in retaliation for any specific grievance or other constitutionally protected activity. In fact, it is unclear whether these actions amounted to retaliation at all. And otherwise, Plaintiff has failed to set forth what specific legal right he believed these actions violated. *Nasious v. Two Unknown B.I.C.E. Agents,* 492 F.3d 1158, 1163 (10th Cir. 2007) (to state a claim in federal court, a *pro se* litigant must explain, *inter alia,* what specific legal right the plaintiff believes the defendant violated). As such, the court finds that Plaintiff's fifth claim fails to state a claim for relief and is properly dismissed.

**D.      *Qualified Immunity***

Defendants also argue they are entitled to qualified immunity in their individual capacities.   (Mot. at 11.)   Whether Defendants are entitled to qualified immunity is a legal question.   *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir.2007).

> Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry.   First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, . . . the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct.   With regard to this second [prong], the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances presented.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted).   "A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."   *Id.*   "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry.   *Id.* Having concluded that Plaintiff has failed to state a claim for a constitutional violation, Defendants are entitled to qualified immunity from Plaintiff's § 1983 claims.

WHEREFORE, for the foregoing reasons, I respectfully

RECOMMEND that Defendants' "Motion to Dismiss" (Doc. No. 44) be GRANTED and

that Plaintiff's "Motion for Summary Judgment Pursuant to USCS Fed. R. Civ. Proc. R. 56(b)"

(Doc. No. 56) be DENIED as moot.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve

and file written objections to the Magistrate Judge's proposed findings and recommendations

with the Clerk of the United States District Court for the District of Colorado.   28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).   A general

objection that does not put the district court on notice of the basis for the objection will not

preserve the objection for *de novo* review.   "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review."   *United States v. One Parcel of Real Prop.*

*Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).   Failure to

make timely objections may bar *de novo* review by the district judge of the magistrate judge's

proposed findings and recommendations and will result in a waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the

magistrate judge.   *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's

decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection

does not preclude application of the "firm waiver rule");   *One Parcel of Real Prop.*, 73 F.3d at

1059-60 (a party's objections to the magistrate judge's report and recommendation must be both

timely and specific to preserve an issue for *de novo* review by the district court or for appellate

33

review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 13th day of February, 2014.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge